Oral argument not to exceed 15 minutes per side and is short for the amount. May it please the court, good morning. My name is Anne Short and along with Don Bosch we represent Richard Baumgartner. I would like to reserve three minutes of my time please for rebuttal. You may. Affirmative concealment. That element of 18 U.S.C. 4 is at the heart of this case. And if this appeal can be resolved by finding that the evidence is legally insufficient to support that element, then this court doesn't need to confront the constitutional limitations of 18 U.S.C. 4 as we've outlined in our briefs. Several definitions of affirmative concealment have been proposed based upon various fact patterns we've seen in cases. Intentionally giving a false impression that the earlier felony never occurred. We see that in Patel v. Mukasey. It can include giving an untruthful statement to authorities. It can include throwing dust in the eyes of investigators and providing them with misleading information. That's from Neal v. United States, which was the case that the Sixth Circuit used to develop the four element test for misprision of felony. In terms of the application to this case, as I understand the government's brief, it was Mr. Baumgartner's invocation of drug court to these various individuals that somehow actively concealed a federal drug conspiracy to distribute drugs. We suggest that argument cannot be sustained as a matter of law under the individual facts of the counts in this case. Count 1, Judge Elledge, Anderson County, June of 2009. Ms. Castleman at that time is incarcerated in Anderson County. She is being held on misdemeanor drug possession offenses, misdemeanor paraphernalia offense, and one felony charge of tampering with evidence. Mr. Baumgartner, the evidence showed, called Judge Elledge. He said Ms. Castleman had been in his drug court, truthful statement, and that he believed she would be a good drug court candidate for Judge Elledge's court. First of all, that right there kind of broaches on one of the cases that we see, the Chambrenay case, where whether a truthful statement, but not the whole truth, can even support an act of concealment. Let me ask you a question. Yes, Your Honor. If he had disclosed the whole truth, the government says he should have, would he have incriminated himself in a drug transaction? Under the way the government perceived he should have disclosed, he would have incriminated himself in terms of purchasing narcotics. Well, purchasing narcotics is an offense. Excuse me, yes, Your Honor. Simple possession, yes, Your Honor. All right. Let me ask you this. Is purchasing a drug product from a group, a member of a group that's conspiring to deal in drugs, does that implicate the purchaser in the conspiracy? No, Your Honor, it does not. That would be the classic buyer-seller relationship at that point in time, not dealing with the issue of... Suppose he was purchasing it either for personal use or for resale. Would it have implicated him in the conspiracy? I think if there was evidence that had shown that he was further distributing the drugs that he was purchasing, then yes, I think that would have the potential to bring him within the ambit, but that was not the evidence in this case. I understand that, but from his standpoint, the point before it, does he suffer the danger of a potential charge against him? Yes, Your Honor. Not a conspiracy charge, we don't believe, under the evidence in this case. How does he know the government's not going to charge him with conspiracy? I'm not sure any of us can have any assurance, Your Honor. Have you ever seen a simple purchaser charged with conspiracy and then acquitted, but at least having to go through the travail of a trial to establish his innocence? Your Honor, I have not personally experienced or defended that kind of prosecution, no, sir. Counsel, if I could take you to sort of cut to the chase here, if you look at the approach to the assistant district attorney, Blevins, which was on a drug charge in Knox County, he says it was burglary drugs and DUI. Is that the same charge that was before Judge Jackson in Knox County earlier that same year? The burglary charge was, Judge Jackson bound that over to the grand jury, so that was the same charge. So somebody, but then drugs and DUI came in later? The DUI came in later. The evidence is not necessarily clear about that. The drugs appear to be from the result of the evidence shows when she was in the hospital and there were certain pills that were found in her room and confiscated, and she was charged with simple... In any event, Counsel, you have some specific attacks on individual pieces, but starting especially with Blevins and overall, why isn't it that trying to keep her out of trouble in effect, to get her out of court, is a way of concealing the conspiracy, that you have your co-conspirator, or not co-conspirator, strike that, you have a conspirator for whom you have, she's both your supplier, potentially your mistress and whatever, but by keeping her out of trouble, doesn't that conceal the conspiracy? Your Honor, there was at least, let me see if I can put this in context, probably at least 50% of the time of this charge from June 2009 through October 2010, she was incarcerated. Mr. Baumgardner did nothing. Well, the charges are with respect to these five specific contacts, the conspiracy may have been continuing, but as to these five specific contacts, they happened at specific times when she was in, I grant you there are various ways, but there are various ways that she was either in trouble or in need of assistance or something to make her look better and not be in trouble. Is that a fair statement of what they were actually doing? Now, the intent is kind of what I'm prodding you on is, for example, if his intent was wholly to keep her sexually available, would that defeat the misprision charge all by itself? It could, Your Honor, but let me back up to a statement you made, because I think this is really what the government is saying in their brief with Mr. Blevins and Magistrate Briggs, is that the statements he made, such as to Mr. Blevins, she may have been in his drug court, she was in his drug court, she was trying to get her life straightened around. The charge is no good, isn't that? That was Magistrate Briggs, and then to ADA Blevins was do what you can. The government writes that what those statements did, they gave a false impression that she was uninvolved in any serious criminal activity, and we're saying in terms of legal evidence sufficiency that that cannot suffice to be active concealment of a federal drug conspiracy. It's not active concealment of any kind of criminal activity. It has to go to this underlying federal drug conspiracy. So does the recipient have to know about the drug conspiracy, or only the defendant in making the charge? In other words, if the defendant is in fact trying to conceal it by making this statement, does the recipient have to know that it's about a federal drug charge? It would certainly have to have that natural tendency, Your Honor. I'm not saying that that would have to be shown, that it actually did, but there would have to be some natural tendency to conceal simply. For example, I suppose every time that I represent a client, it could be said that what I'm trying to do is to give the impression that my client is not as involved. That's what they said about Socrates, he made the worst appear the better cause. Right. And so I suppose standing here at this minute, I could be said to be trying to, you know, lessen the involvement in criminal activity, but that's not what misprision requires in terms of the defendant's specific knowledge of what is the underlying felony, and the underlying felony is a federal conspiracy. I'm sorry, you said the defendant's specific knowledge. The defendant here knows what's going on. I was focusing on, I thought you were trying to say that the recipient needs to know about the drug felony. No. I mean, the defendant, Baumgartner, knows what's going on, right? Well, we don't concede that, Your Honor, but for purposes of our argument today, that is simply just not the legal hill the defense wants to die on. So, the cons... Your theory is actually that the defendant's acts of deception were too far removed from the underlying narcotics conspiracy to have concealed that conspiracy. That's basically the argument that you're giving us on this, I take it. Yes, Your Honor, to the extent any given... Specific statements regarding the conspiracy that the government claims he concealed, he made other statements of deception, and some of them may have applied to various criminal activity, but he didn't make statements of deception regarding this specific conspiracy, if I understand your argument. I think that that is fair, and I think the count involving Annette Beebe at the YMCA is a very good example of that, Your Honor. There is no question that telling her that Ms. Castleman passed the drug screen was incorrect. What did that do? That only, if anything, concealed her personal drug use. The only leap you could make as a matter of law to say that had any tendency to conceal an underlying federal drug distribution conspiracy would be if we say anyone who uses drugs or who is a drug addict, by definition, is part of a federal drug conspiracy. But when he makes the statement that she's a good, to a judge or whomever, that she's a good candidate for drug court, that statement may or may not be correct. It may be deceptive, but that wouldn't make him guilty of misprision because he's not making an act of misrepresentation regarding this particular conspiracy. Is that basically the argument you're giving us? I think clearly for count one with Judge Elledge it is, Your Honor, because the proof is undisputed that had she gone into drug court, it would have severely limited her ability to continue to operate in what the government claimed was this federal drug conspiracy. It would have been completely counterproductive, I guess, Your Honor. Let me ask you one question before you leave. Yes. Are you challenging the judge's instructions in any way? Forget about the evidence, just the instructions. What he told the jury they were required to find in order to come to a conclusion the defendant was guilty. Well, we have raised two jury instruction questions. If you're speaking more specifically as to the elements of the offense of misprision of felony, no, we're not. We are challenging two other failure to, one instruction and one failure to instruct, Your Honor. But not the definition of what they were required to find in the way of knowledge and action. That he had to have actual knowledge, knowing active concealment, and knowingly failing to reveal to a federal official. No, Your Honor, we didn't. We thought that was one of the better instructions we could find anywhere in the country, actually. Two quick questions. A minute ago when you were saying that, well, if she had gone into drug court, it would have been counterproductive. I take it that's counterproductive to the continuance of the conspiracy, not necessarily counterproductive to the concealment of the conspiracy. It might have ended the conspiracy in the sense that she couldn't keep operating. Is that a fair distinction? I don't think it would have had any effect on the previous alleged conspiracy in the case. Because the charge isn't that he's furthering the conspiracy, it's only that he's concealing it. Okay. With respect to the second question, with respect to Briggs, I take it at least his approach to Briggs was subsequently followed by vacating the warrant and releasing her own on her own recognizance. That would seem to have assisted the continuation of the conspiracy, wouldn't it? No, Your Honor, that had absolutely no effect on the continuation of the conspiracy. Well, it kept her from being in jail. No, Your Honor, absolutely not. She was being on a hold from juvenile court and also being held on criminal court charges. She was incarcerated from July of 2010 all the way through December of 2010. So am I wrong? I thought that Briggs had released her on her own recognizance after the approach. On the juvenile court arrest and hold, he had released her, but she still was being held on the not-scalable. Okay. So what you're saying is that vis-à-vis Briggs, it helped her, but because independently she was in jail on something else, she didn't actually get out on the street. Oh, absolutely not. Okay. But so Briggs did act favorably to her. It just didn't have much effect. Briggs vacated the arrest warrant, didn't he? He did, I think. And released her as far as he was concerned. The juvenile court warrant. Okay. Yes, Your Honor. So what's wrong with my statement that it assisted her, it just didn't have much effect? And then, very briefly, the point being, how in the world does that actively conceal a federal drug conspiracy? And that's what we keep coming back to. Okay. You'll have time for rebuttal. Thank you. Good morning. May it please the Court, David Lewin for the United States. Your Honor, the evidence presented to the jury in this case is sufficient to affirm the defendant's five separate convictions for his violations of 18 U.S.C. section 4, that is, misprison of a felony. Let me ask this. Why does there not have to be some nexus for this misprison conviction? Why does there not have to be some nexus between the lies and the deception and the drug conspiracy? Your Honor, the United States believes that there is a nexus, but the government would agree with, Your Honor, that if he had approached Judge Elledge and said, you know, Dena Castleman's favorite color is blue, and in reality it's red, that that would not be considered an affirmative step to conceal. But he didn't make any statements to, the defendant didn't make any statements to Briggs or anybody about, that specifically addressed the existence of the drug conspiracy that she was in. Why isn't that a problem? That's not a problem because what he did, did have a nexus to a drug conspiracy. What was presented to the jury was drug court and the fact that this judge, Richard Bumgarner, former judge, preyed upon people's understanding of drug court. Drug court, Judge Elledge testified, is for addicts. It's not for drug distributors. Richard Bumgarner knew different. The people would have to assume certain things about drug court or rely upon their understanding of what that amounted to and they would assume, perhaps they'd assume that somebody who was eligible for drug court wouldn't be involved in a drug conspiracy of any kind. But those are all assumptions, not conclusions flowing from a misrepresentation from the defendant. Your Honor, the United States doesn't believe and the case law doesn't hold that someone like Richard Bumgarner would have to approach a judge and say, hey Judge Elledge, I want you to know that Dena Kalsman's not in a federal drug trafficking conspiracy. No case says that. He doesn't have to say that. Well, he doesn't have to say that, but he would have to mislead, actively mislead, wouldn't he, away from a belief that she was participating in such a conspiracy. He was misleading. You have to look at the context. That's what all the cases show, Your Honor. There is no formula as to what constitutes an affirmative step to mislead or to misrepresent or to conceal. Richard Bumgarner received a letter from Dena Kalsman and she wrote in that letter from the Anderson County Jail, I'm stuck in this jail. I'm indicted. I'm afraid I'm going to do a long stretch of time. People get stuck in this jail and they do not get out. It was only after he received that letter that he then contacted Judge Elledge and references drug court, all because he wants her to get out, because she can't satiate his physical desire for her or his desire for drugs from her house. We're not disputing that he made misrepresentations or that he was deceptive. Just whether he was, or at least speaking only for myself, just whether he made misrepresentations regarding this, the narcotics conspiracy, to other, well to I guess authority and law enforcement decision makers. Yes, Your Honor. He's attempting to cast her as nothing more than an addict, an addict who is in dire need of jail-free drug court where she can get counseling, treatment, job training, and whatever else is supposed to come with drug court. He wants her out and by effectuating her continued conspiratorial acquisition of pills for him, he necessarily is concealing what she was doing. He chose to speak to all these state, three judges, a state prosecutor and a housing director. He chose to speak and when he chose to speak he lied. He lied to them over and over again. Out of a... With respect to Elledge, why is that part of the conspiracy at that point? I thought at that point he and Castleman essentially were only in a buyer-seller relationship. Well, Your Honor, the United States has never alleged that Richard Baumgartner was part of this conspiracy. No, but he knew there was a conspiracy beyond that, that he was trying to conceal the conspiracy as opposed to trying to just help her personally. Yes, Your Honor. Our brief lays out the sequencing of events when she was in his judge's chambers in May of 2009 where he says, I like my opiates. Can you get me hydros? And it's important what she says. She says yes. She doesn't say, let me check, I'm not sure. He gives her $175. That is evidence that she has a mutual understanding with someone else to obtain drugs and deliver those drugs to him. And when he spoke to Judge Elledge, he was operating under that understanding of that relationship between him and her and her vis-a-vis the pill trafficking network of which she was a part. And when you, at that point, you rested only on the fact that she didn't have the pills on her. She had to go further back? Yes, Your Honor. She didn't have the pills on her. She was not going to go to a doctor or a pharmacy. She was going to get pills from her pill trafficking network. Jury heard evidence that she had partnered. Does she say that to him at that point? No, Your Honor, but when you take her unequivocal yes and his unequivocal handing her $175 in cash, that word and his behavior in handing her the money communicate, one, his understanding of how she's going to get the drugs. She also testified that her pill suppliers had fronted her in the past. She testified at what time in what context. That is, for him to be concealing a conspiracy, her statement of what she does isn't relevant, is it? I mean, how does he know that she's part of a conspiracy rather than simply a seller? He knows that she's going to have to get drugs from someone else, and those drugs are not going to be for her. They're going to be for him. At any rate, that's only relevant to Elledge. If you look at all five of these, what is the strongest in your view, or is it simply that any keeping her out of trouble furthers the conspiracy? Well, Your Honor, I think when you look when he started this criminal relationship with her, he warned her. He told her, do not go against me. So you have to ask yourself, why would he make such a warning to this defendant of his? Why would he warn her that way? He warns her because he knows that she presents a unique and especially volatile risk to him, his livelihood, his professional reputation. Don't ever go against me. He knows that she has a lot of power when they engage in this type of relationship. And even though halfway through the conspiracy into the spring of 2010, she hands him off to Christopher Gibson, and he's getting his pills hand over fist from Chris Gibson. She does. I agree with the opposing counsel. She was in the Knox County Jail from the summer through the winter of 2010. But she wants his help. He knows that he can't just cast her aside and leave her to toil away in a county jail. If he doesn't help her, if he doesn't interject himself into her criminal justice matters the way he was and the way the evidence was shown to the jury and made all those statements, the jury was allowed to decide what his intent was in making those statements to three judges, a state prosecutor, and a housing director. His intent, it was argued that it was just to cover up an affair or that he was just some magnanimous criminal court judge who was motivated out of genuine concern for her welfare. The jury rejected those bases. You're saying first that he needs to conceal the conspiracy because if the conspiracy as a whole is revealed, his connection and his crimes are going to be revealed. I buy that part. But then his specific statements have to be to intend to conceal the conspiracy. He's got a desire. He's got a motive. Then the question is, he might start with, to me, the weakest, which is the YMCA. She needs a place to stay. How would that be any different than paying her rent for an apartment? Yes, Your Honor. Would that be Miss Prizian if he, you know, obviously if you have a mistress, you might want to have an apartment for her. It would help her in the conspiracy, but it wouldn't conceal the conspiracy. Your Honor, I think with Miss Beebe, the fact that the YWCA worked hand-in-hand with his drug court, Dena Castleman, again, needs his help. He arranges for her to get a place to stay at the YWCA. Again, what he can't do is he can't say, Dena, I've had enough of you. Are you saying that anything he does for her is going to conceal the conspiracy? I mean, it can't be that. Is it any statement you make to somebody else? No, it's not to anybody else, but these weren't just chance encounters with random people on a sidewalk. These were deliberate people that he sought out. It's important that he initiated contact. Nice things for her, in one sense you're saying, to keep her quiet or to keep her on the string. Is that really more what you're saying? Yes, Your Honor, and even with Annette Beebe. That's why he had to participate in the falsification of the urinalysis. He can't call Annette Beebe and tell the truth in front of Dena Castleman in his office when he says, I'm about to go to hell for this. He picks up the phone and says, it's clean. If he says, it's dirty, you need to kick her out, right in front of her, he knows he's got problems. He has to keep her happy, especially there towards the end of the conspiracy when Christopher Gibson was the one that was providing him all the pills. When you look at these statements, the jury is allowed to draw reasonable inferences as to what he did and why he did it. So then the connection is more by lying to various people about various things, you keep her happy, and that conceals the conspiracy. Yes, on these facts, and I wouldn't say just various things. As I opened it, if he lied about her favorite soda, that's irrelevant. Well, the various things, though, are drugs, but at least there's some problem with whether they're in some way related to the conspiracy. Yes, Your Honor, but even with Annette Beebe, Annette Beebe, you can't stay at the YWCA if you're even using drugs. And again, the fact that he was a sitting drug court judge saturates this case. If you were a doctor, if you were a doctor and you wrote false prescriptions to keep somebody happy, let's suppose that rather than being a judge, you're the doctor, and maybe you're also getting some from her, but let's suppose that you could write prescriptions, would that be misprision? You're falsely testifying. You're falsely stating that they need the drugs. Would that be misprision? That sounds almost like this court's opinion in Goldberg, where the doctor was giving prescriptions to the pharmacist, and he knew that the pharmacist was adding on to those prescriptions, but the doctor did nothing more than just sat back and allowed that pharmacist to continue to add on to his prescriptions, and this court reversed that misprison conviction because that was just a mere failure to report. Well, but my difference in mind was that the doctor's prescriptions themselves were false. That is, that the person didn't, I mean, I take the distinction you're making, but this guy did make some false statements, but they were then only to keep her happy. So I don't see, I'm not, you're saying that Goldberg is distinguishable. I'm trying to take you one step further. The prescriptions themselves were false. That is, that the person did not need drugs. So he writes a prescription for Ms. Smith, keeps Ms. Smith happy in her conspiracy and in her other activities with him. Would that be misprision? That's assuming that the doctor is aware that the patient, Ms. Smith, is in there all the time. Sure, no, no, because he's, for my hypothetical, she's giving him something else, you know, some other completely illegal drugs, let's say. I think that could be construed as an affirmative step to conceal, Your Honor. Yes, Your Honor. I don't mean to be facetious and put words in your mouth, but what you're saying to us that this was an illegal form of judicial activism? An illegal form of judicial activism. No, I think what he did was he committed all the crimes required for misprison. Yes, but he was an activist. It wasn't that he deliberately set about to conceal her role, where he should have reported. Is that what you're saying to us? No. I think when he sought out those three judges and the state prosecutor and the housing director, he did so with an intent to keep Dena Castleman's crimes, of which he was the primary beneficiary. He knew full well what was going on. He was trying to keep them quiet, suppressed. To keep it perpetuating, and by doing that, he's also having to conceal. Those are mutually exclusive. You can't attempt to have her perpetuate in this conspiracy and not also conceal it at the same time. What was shown to the jury was a corrupt man wearing a judge's robe, going and interposing himself between his mistress drug dealer and three state judges, a state prosecutor and a housing director. It was his knowledge that she was involved in a federal drug trafficking conspiracy and his knowledge of the fact that he knew that that could not come out. It couldn't come out, and he chose not to keep his mouth shut. He chose to engage these people, and that's why we're here. The jury was able to draw a reasonable inference as to what his intent was when he constantly invoked drug court, which was a blatant lie. The jury was free to draw. Was there any reason that you didn't try him as a part of the conspiracy, or was the conspiracy ever tried? Any of these other people tried in federal court? Your Honor, Dena Castleman and Christopher Gibson were both in state prison at the time. The participation—I see my time is up. There was no evidence that we could find that showed that Richard Baumgartner was wanting to distribute those $750 worth of hydros per week that he was getting. He was eating those. So you agree with your adversary that simply by buying he wouldn't become a part of the conspiracy? No, Your Honor, but he did give her the phone, and that obviously perpetuated her ability to continue in that, but the United States did not charge him with conspiracy because it could not believe it could be proven. Anything else from my colleagues? Thank you. Thank you, Your Honors. Ms. Short, you have three minutes for rebuttal. In terms of Mr. Baumgartner's intention to use Mr. Lund's term, inject himself into the criminal justice system on her behalf, we also need to understand, and the evidence showed, with Mr. Baumgartner himself being a judge, for example, when he goes down in the back hallway to talk with Judge Jackson, the only thing Judge Jackson does is call balls and strikes all day long. Probable calls, not probable calls. He could have had any conversation at all with Judge Jackson, and according to Judge Jackson's testimony, it would not have mattered one bit on what he did when he went into that courtroom to see if there was probable cause to bind over the burden. Because Judge Jackson is such an upright fellow, he's not going to respond to a – I mean, you don't have to prove that it will work, do you, in order to be attempting to conceal, to have an intent to conceal? Your Honor, I agree, but let's put this in context. We're not talking about just an average citizen who thinks maybe if I go back and talk to a judge I can help somebody. You have a criminal court judge who very well understands that's the only thing Judge Jackson's going to do. He was asked and testified very specifically, for example, if Mr. Baumgartner had said to you she's the worst person in the world, I want you to throw the book at her, he said it would make absolutely no difference. Counsel, let me take this to something else, because the key part we've been focusing on, to me, is this kind of intent to conceal. What, in your view, would he have had to have done for her to have an intent to conceal? I would have to back up one step, Your Honor, and say that I would need some suspicion that any of these people would have had any idea that there was some – Somebody has to be on to them in order for you then to try to play defense. Or at least something that we can look at objectively to say that there is something perhaps afoot here. But making statements about drug court when Ms. Castleman is facing misdemeanor. So if somebody had said, gee, we sort of hear some rumors that maybe she's into big stuff, and he says, nah, she's only in drug court, would that be good enough? I think the government might get to the jury with that kind of proof. I mean, on this, I know you have the other things about federal authorities, but focusing just now on intent to conceal. Okay, sorry, go ahead. That was my mistake. No, that was – if there were any other – Anything else from my colleagues? Okay, thank you. That case will be submitted. The court will take a short recess.